UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Donald Earl Eaddy, #294169, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> Pamela Derrick; Thomas Byrne, M.D., John and ) <br> Jane Does, ) <br> ) <br> ) <br> Defendants. ) <br> _____ ) | C/A No. 5:13-cv-02692-RBH-KDW <br><br><br><br><br> Report and Recommendation |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment filed on May 30, 2014. ECF No. 36. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on June 2, 2014, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 37. Plaintiff responded to the Motion for Summary Judgment on July 7, 2014. ECF No. 41. Additionally, Plaintiff filed a 12(b)(6) Motion to Dismiss Defendants' Motion for Summary Judgment on July 7, 2014. EFC No. 40. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because these Motions are dispositive, a Report and Recommendation is entered for the court's review.

   I.     Factual and Procedural Background

Donald Earl Eaddy ("Plaintiff") is currently incarcerated within the South Carolina Department of Corrections ("SCDC"). Plaintiff was housed at Allendale Correctional Institution

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

("ACI") during the time period relevant to his Complaint. ECF No. 1 at 2. Plaintiff filed his Complaint on October 2, 2013, alleging Defendants acted with deliberate indifference toward his medical needs which amounted to cruel and unusual punishment. *Id.* at 2-3.

Plaintiff maintains that Defendant Derrick refused to assist him with getting necessary treatment and is always sarcastic and unhelpful in his dealings with her. *Id.* at 3. Plaintiff asserts that Defendant Byrne, the physician at ACI, is familiar with Plaintiff's medical condition and knows that other doctors have recommended he be provided a test-trial for a Baclofen Pump. *Id.* Further, Plaintiff represents that Defendant Byrne knows that Plaintiff is handicapped and either cannot move his lower extremities or move them with ease. *Id.* Additionally, Plaintiff alleges that Defendant Byrne has refused to provide Plaintiff with therapy or allow him to get a brace for his feet and/or ankles since his feet are somewhat crooked. *Id.* Plaintiff alleges he is continuing to suffer a "significant degree of pain to [his] back, buttuck, hip, and areas near and around [his] legs that sometimes it feels as if [he is] about to pass out, in spite of the pain medication given." *Id.* at 3-4.

Plaintiff represents that he suffers from spastic paraparesis and other injuries. *Id.* at 4. Further, Plaintiff alleges that Defendant Byrne "placed medical costs over medical care claiming or alleging along with Defendant Derrick that even if the pump would help [him] stand and [temporarily] gain some control over [his] lower extremities." *Id.* Plaintiff alleges that his father has reached out to SCDC on Plaintiff's behalf and in an attempt to have medical personnel help Plaintiff to no avail. *Id.* Plaintiff alleges that Defendant Byrne has allowed Plaintiff's condition to worsen and refuses to order an MRI to isolate specific areas of Plaintiff's injury, even possible cancerous growths. Plaintiff represents that prior to coming to SCDC, he could walk some, but due to lack of treatment or therapy, Defendant Byrne allowed Plaintiff's condition to worsen. *Id.*

In a Supplemental Pleading attached to his Complaint, Plaintiff repeats many of the factual allegations against Defendants. *See* ECF No. 1-4. Plaintiff maintains that he is in chronic pain because Defendant Byrne has failed to refer him to a neurologist for the pain in his legs caused by lower back nerve damage. *Id.* at 2. Plaintiff argues that his need for medical attention is sufficiently obvious because he cannot stand, walk under his own power, and is confined to a wheel chair due to his persistent leg pain. *Id.* Plaintiff represents that Defendant Byrne denied Plaintiff surgery that was scheduled in 2007, before Plaintiff came to ACI, and refused to reschedule it because Defendant Byrne believes the surgery for the baclofen pump is too costly. *Id.*

Plaintiff alleges that Defendants acted with deliberate indifference to his serious medical needs and were aware of his pre-existing medical problems upon his entry into SCDC. *Id.* Specifically, Plaintiff maintains:

> Access to medical staff has no meaning if the medical staff is not competent to deal with the Plaintiffs' problems. The medical staff must bee (sic) competent to examine the Plaintiff and diagnose illnesses. It must be able to treat medical problems or refer Plaintiff to others who can. Such referrals must be to another physicians on the outside of the prisoner, or to physicians or facilities outside the prison if there is reasonably speedy access to these other physicians or facilities.

*Id.* Further, Plaintiff alleges that Defendant Byrne took him off his prescribed medicine—which Plaintiff asserts "can itself constitute deliberate indifference." *Id.* at 3.

Plaintiff asks the court to hold Defendants liable for refusing to properly or effectively provide him with medical treatment. *Id.* at 5. Additionally, he requests he be taken to an outside medical facility where he can get tested or properly diagnosed to ensure no further injuries have developed. *Id.* Plaintiff seeks $300,000 in compensation for his pain, suffering, and emotional distress, and he also seeks punitive damages. *Id.*

II.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

III.     Analysis

4

A. Medical Indifference[2]

Defendants argue that Plaintiff has failed to demonstrate that they were deliberately indifferent to his serious medical needs because Plaintiff "is currently being treated and has been consistently treated with oral Bacloflen and pain medication." ECF No. 36-1 at 5. Further, Defendants maintain that Plaintiff has only provided the court with conclusory statements and accusations without any corroboration. *Id.* Moreover, Defendants maintain that the Eighth Amendment entitles Plaintiff to "medical care," but this right has limitations, particularly concerning elective treatment. *Id.* at 6-7. Specifically, Defendants argue that "not receiving an elective pain management, i.e., Baclofen pump, that is not medically necessary and is not practical for the prison environment does not rise to a constitutional deprivation." *Id.* at 8.

In Response, Plaintiff argues that Defendants are deliberately indifferent to the Plaintiff's serious medical needs when they deny, delay, or intentionally interfere with medical treatment. EFC No. 41-2 at 2. Plaintiff argues that Defendant Byrne admits "that it would be to (sic) costly for the surgery," but that Plaintiff was pre-approved for the surgery prior to his transfer to ACI. *Id.* Further, Plaintiff argues that Defendant Byrne made this opinion without consulting a neurologist or orthopedist, and therefore the decision was premature. *Id.* Plaintiff cites to several cases where he maintains their holdings indicate prison doctors erred in failing to send inmates to specialists or send them for further assessment. *Id.* at 4. Additionally, Plaintiff cites to cases that

---

[2] The undersigned notes that Defendants also assert that Plaintiff's claim should be dismissed because he failed to file it within the applicable statute of limitations. ECF No. 36-1 at 11-12. However, because Plaintiff could have discovered his injuries—continued pain, not receiving desired medical care or consultations—within the applicable statute of limitations, the undersigned addressed Plaintiff's claims on the merits. *Tollison v. B & J Mach. Co.*, 812 F. Supp. 618, 620 (D.S.C. 1993) ("The important date under the discovery rule is the date that a plaintiff discovers the injury, not the date of the discovery of the identity of another alleged wrongdoer. If, on the date of injury, a plaintiff knows or should know that she has some claim against someone else, the statute of limitations begins to run for all claims based on that injury.").

5

he maintains concern a defendant's interference with medical orders or defendant's failure to carry out medical orders. *Id.* at 5-6.

To prevent the entry of summary judgment on a cause of action for deliberate indifference to medical needs, a plaintiff must present evidence sufficient to create a genuine issue of fact that the defendant was deliberately indifferent to his serious medical need. *Farmer v. Brennan*, 511 U.S. 825, 832-35 (1994); *Wilson v. Seiter,* 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). Deliberate indifference to a serious medical need requires proof that each defendant knew of and disregarded the risk posed by the plaintiff's objectively serious medical needs. *Farmer*, 511 U.S. at 846. An assertion of mere negligence or malpractice is not enough to state a constitutional violation, plaintiff must allege and demonstrate "[deliberate indifference] . . . by either actual intent or reckless disregard." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990), *overruled in part on other grounds by Farmer*, 511 U.S. at 837. In other words, a plaintiff must allege facts demonstrating that defendant's actions were "[s]o grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* The Fourth Circuit Court of Appeals defines a serious medical need as "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreye*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citation omitted).

The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Farmer,* 511 U.S. at 835; *Wilson,* 501 U.S. at 297. Concerning a pre-

imprisonment course of treatment, the Fourth Circuit Court of Appeals held: "Although an inmate certainly has a right to necessary medical treatment, he does not have a right to demand that the opinion of his pre-imprisonment doctor be permitted to override the reasonable professional judgment of the prison's medical team." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011). There, Clawson asserted that a prison's policy violated his Eighth Amendment rights because it was different from the treatment regimen he had been prescribed by his government doctor. *Id.* at 537-38. However, the *Clawson* court disagreed, finding Clawson read *Estelle v. Gamble*, 429 U.S. 97 (1976), too broadly—that the *Estelle* court "held that a mere difference of opinion regarding the adequate course of treatment does not give rise to an Eighth Amendment violation." *Id.* at 538. Additionally, the court noted that "[t]he right to treatment is, of course, limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable. *Id.* (citing *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).

Defendant Byrne opines that a Baclofen pump is not medically necessary and has not been necessary since 2007. ECF No. 36-3 at 1-2. Defendant Byrne acknowledges that Plaintiff was a candidate and was approved for the surgery; however, due to the high cost of surgery and the excessive maintenance of the device, Defendant Byrne did not think it was the best option for prison life. *Id.* at 3. Moreover, evidence demonstrates that Plaintiff has always had a prescription for oral Baclofen for his ailment which is the same medication that would be administered through the Baclofen pump, and is an accepted and practical way to treat his symptoms. *Id.*

Furthermore, Defendant Byrne opined that Plaintiff does not need additional neurological or orthopedic treatment outside of what he has already received. *Id.* Defendant Byrne also opines that Plaintiff does not need an MRI at this time, and he avers that Plaintiff "was provided with a

7

punch biopsy of the suspicious site, and the results were normal, with no cancerous properties in early 2013." *Id.* at 3-4.

The record before the court reveals that Plaintiff was treated for various complaints, including his spastic paraparesis, on multiple occasions. When Plaintiff arrived at SCDC, he was issued a wheelchair for assistance and he uses a walker in the dormitory area. *Id.* Due to complaints of pain, Plaintiff underwent an anterior cervical diskectomy and fusion at the C5-6 level on November 1, 2006. *See id.*; 36-6 at 2-3. Thereafter, Plaintiff had follow-up radiological examinations for his cervical spine on October 22, 2008, January 14, 2009, May 12, 2010, and June 20, 2011. *Id.*[3] The inmate was given a spinal MRI on February 9, 2007, which indicated a small disc herniation and satisfactory postoperative changes of disketctomy and fusion. ECF No. 36-3 at 2; 36-4 at 22.[4]

Plaintiff received a neurological consultation at USC Palmetto Neurology on January 8, 2007 and a follow up on February 16, 2007. ECF No. 36-3 at 2; ECF No. 36-6 at 7-10. The recommendation from the January consultation was to have a cervical MRI conducted. *Id.* Follow-up x-rays of the inmate's cervical spine, where the fusion was performed, showed an anterior cerival fusion at C5-6 and loss of normal spinal curvature. *Id.* The films showed good plate position, screw position, and bone plug position. *Id.* Upon contacting the neurologic physician for clarification on the follow-up consultation in February, Defendant Byrne received the recommendation to treat this inmate with "conservative therapy" and that surgery was not indicated. *Id.*

---

[3] Affiant references "Image Care results," however, these reports have not been provided to the court for review.
[4] Affiant references MRI results dated February 9, 2007, however these MRI results have not been provided to the court for review.

Based on the neurologist's recommendation and Dr. Byrne's examination, Plaintiff was prescribed 80 milligrams of Bacloflen per day to be taken orally, the maximum recommended dosage, and no more than 80 milligrams of Motrin for pain. ECF No. 36-3 at 3. For neurological pain, Plaintiff was prescribed Neurontin, and Defendant Byrne renewed this prescription several times. *Id.* Plaintiff's Neurontin prescription was suspended because it was taken off of the SCDC formulary due to abuse and sale of it. *Id.* Defendant Byrne avers that he ordered Tegretol for Plaintiff in place of Neurontin. *Id.*

On January 27, 2009, Defendant Byrne ordered an x-ray be taken of Plaintiff's pelvic area after Plaintiff complained of pain in his hips and buttocks. *Id.* The films indicated some degenerative changes in the right hip, but no other significant findings. *Id.* Plaintiff was prescribed Motrin for pain and did not appear to be in pain when examined. *Id.*; ECF No. 36-4 at 13. Currently, Plaintiff is prescribed Prednisone and Motrin. ECF No. 36-3 at 4. Additionally, Plaintiff was issued a Theraband and has been receiving regular physical therapy. *Id.* Plaintiff continues to be treated with oral Bacoflen. *Id.* Furthermore, Defendant Byrne avers that Plaintiff "has been treated consistently and has been prescribed medication for his ailments. At no time has [Plaintiff] been deprived of medically necessary treatment, nor [has Defendant Byrne or the nursing staff] been deliberately indifferent to [Plaintiff's] serious medical needs." *Id.*

Plaintiff maintains that Defendants violated his Eighth Amendment right to medical care by the following actions: (1) not recommending Plaintiff receive a Baclofen pump or interfering with his scheduled appointment for surgery to receive the pump; (2) failing to provide Plaintiff with therapy or allow him to get a brace for his feet and/or ankles since his feet are somewhat crooked; (3) failing to order an MRI to isolate specific areas of Plaintiff's injury or refer him to a neurologist for the pain in his legs from lower back nerve damage; and (4) taking him off of

9

prescription medication. However, not recommending or scheduling Plaintiff for surgery to insert a Baclofen pump, an elective surgery, is not a violation of Plaintiff constitutional rights. *Clawson*, 650 F.3d at 538; *Bowring*, 551 F.2d at 47-48. Similarly, not ordering an MRI or referring Plaintiff to a neurologist are also not violations of Plaintiff's constitutional rights. *See id.* Further, evidence demonstrates that Defendant Byrne has consistently prescribed Plaintiff medications to treat his pain. Additionally, the evidence demonstrates that Plaintiff was issued a Theraband for physical therapy. *See* ECF No. 36-6 at 4. Therefore, the undersigned finds that Plaintiff has not offered any evidence that would support a finding that either Defendant intentionally or recklessly disregarded Plaintiff's medical needs. *See Farmer*, 511 U.S. at 846 (requiring a defendant knew and disregarded plaintiff's serious medical needs to establish deliberate indifference).

Here, Plaintiff is arguing that he is entitled to a different course of treatment than what Defendants recommended. Although Plaintiff may disagree with a treatment regimen or believe he should receive surgery rather than a prescription pain management plan, such allegations do not constitute a constitutional deprivation. *See Brown v. Thompson*, 868 F. Supp. 326 (S.D. Ga. 1994) (finding that although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary). Plaintiff's acknowledgement of the Defendant's recommended course of treatment indicates that his claim is more akin to a claim of neglect or malpractice and does not meet the standard for a plausible claim under § 1983. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). As the *Wright* court articulated:

> Negligence or malpractice in the provision of medical services does not constitute a claim under § 1983. The standard for § 1983 liability is deliberate indifference to serious medical needs. Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged.

*Id.* (internal citations omitted). The undersigned finds that the record does not contain facts that demonstrate Defendants knew of and disregarded Plaintiff's serious medical needs. Rather, the record demonstrates that Defendants were aware of Plaintiff's health conditions, evaluated treatment options, and provided treatment to Plaintiff. Therefore, the undersigned recommends that Defendants be granted summary judgment on Plaintiff's medical indifference claim.

### B.  Qualified Immunity

Defendants maintain that even if their conduct is deemed unconstitutional, they are entitled to qualified immunity. ECF No. 36-1 at 13-14. Additionally, Defendants argue that they are entitled to absolute immunity to the extent Plaintiff sued them in their official capacities. ECF No. 36-1 at 4.

The Supreme Court, in *Harlow v. Fitzgerald,* established the standard that the court is to follow in determining whether a defendant is protected by qualified immunity. 457 U.S. 800 (1982). That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818. When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendants' conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301

11

(4th Cir. 2004) (internal citation omitted). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* at 301-02 (citations and internal quotation omitted).

The record before the court shows that Defendants performed the discretionary function of their respective medical duties, including diagnosing Plaintiff's condition and devising a treatment and pain regimen for Plaintiff, in an objectively reasonable fashion. Neither Defendant transgressed any statutory or constitutional rights of Plaintiff of which they were aware in the exercise of their professional judgments. Thus, if the district judge finds that a constitutional violation occurred, despite recommendations otherwise, the undersigned recommends Defendants be granted qualified immunity from suit in their individual capacities.

Additionally, Defendants are immune from suit in their official capacities. The Eleventh Amendment forbids a federal court from rendering a judgment against an unconsenting state, a state agency, or a state instrumentality in favor of a citizen of that state. *See Edelman v. Jordan,* 415 U.S. 651, 662-63 (1974). Here, South Carolina has not consented to suit in federal court. *See* S.C. Code Ann. § 15-78-20(e) ("Nothing in this chapter is construed as a waiver of the state's or political subdivision's immunity from suit in federal court under the Eleventh Amendment to the Constitution of the United States nor as consent to be sued in any state court beyond the boundaries of the State of South Carolina."); *see also Stewart v. Beaufort Cnty.*, 481 F. Supp. 2d 483, 493 (D.S.C. 2007) (citing S.C. Code Ann. § 15-78-20(e)) ("The SCTCA, which is the 'exclusive remedy for any tort committed by an employee of a governmental entity,' specifically reserved South Carolina's Eleventh Amendment immunity from suit in federal court.").

Therefore, the undersigned recommends granting Defendants' Motion for Summary Judgment because Defendants are entitled to Eleventh Amendment Immunity in their official capacities.

IV.     Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants Derrick, Byrne, John Doe and Jane Doe's Motion for Summary Judgment, ECF No. 36, be GRANTED and this case dismissed. If the court accepts this recommendation, Plaintiff's pending Motion to Dismiss, ECF No. 40, will be moot.

IT IS SO RECOMMENDED.

September 19, 2014                                                          Kaymani D. West
Florence, South Carolina                                                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**